47

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

STEVEN A. ODOM, #161794,

                Petitioner,             Case No. 2:20-cv-12180

-vs-                               Judge Arthur J. Tarnow

BRYAN MORRISON, WARDEN        Magistrate Judge Anthony P. Patti

                Respondent.

_____/

### PETITIONER'S MOTION FOR RELEASE ON BOND

    Petitioner, Steven A. Odom, in pro per, pursuant to 28 USC § 2254 and

F.R.A.P. 23, petitions this Honorable Court to grant him release on

recognizance or reasonable money bond pending a decision on the merits of his

Habeas Corpus Petition, and states:

    1.  On August 3, 2020, Petitioner mailed for filing with the Court, his

petition for habeas corpus.

    2.  On August 14, 2020, the Court, after examining the petition, found

that it was not subject to dismissal under Rule 4, Rules Governing Section 2254

Cases, and issued an order requiring the Respondent to file a responsive

pleading by October 23, 2020. (Dkt. #4)

    3.  The Respondent or his counsel, has failed to file an appearance, a

response to the petition, or a motion for an extension of time in which to

respond. This disregard for the Court's order and for Petitioner's right to a

swift resolution of his habeas claims poses a threat to the orderly

administration of justice. See Fay v. Noia, 372 US 391, 400 (1963); Presier v.

Rodriquez, that habeas corpus claims should receive a "swift, flexible, and

summary determination." 411 US 475, 495 (1973).

4.   Therefore, Petitioner contends that keeping him confined pending a decision on the merits of his habeas petition during what medical experts have projected to be a deadly "Twindemic" (coronavirus/influenza) season this fall/winter, presents a serious and significant risk to his health. As such, he requests that this Honorable Court release him on recognizance or reasonable money bond pending the resolution of his habeas petition.

5.   The power of a federal court to release a state prisoner who is a habeas corpus petitioner on recognizance or reasonable money bond pending a resolution of his Habeas Corpus case is well established. In fact, a federal court may release on bond or recognizance a state prisoner while consideration of his federal issues is pending, even before Habeas Corpus is granted. See Puertas v. Overton, 272 F.Supp.2d 621, 630 (E.D. Mich. 2003); Moore v. Egeler, 390 F.Supp 205, 207 (E.D. Mich. 1975). See Brief in Support.

6.   Even when the charge is first degree murder, release pending a decision on the merits of a habeas petition has been granted. See Clark v. Hoffner, 2020 U.S. Lexis 61577 (E.D. Mich., Case No. 16-11959, Unpublished Opinion dated April 8, 2020). Here, the charge is armed robbery and bank robbery.

7.   Even though release on bond pending a decision on the merits of a habeas corpus petition is rarely granted, to qualify for release, Petitioner must show: (1) a substantial claim of law based on the facts surrounding his petition, and (2) the existence of "some circumstances making the [motion for bond] exceptional and deserving of special treatment in the interest of justice." Aronson v. May, 85 S.Ct 3, 5-7 (1964); Dotson v. Clark, 900 F.2d 77, 79 (CA 6, 1990). See Brief in Support.

8.   Petitioner raised a number of constitutional claims of error in his petition before the Court, but only relies on the two substantial claims of law

2

infra based on the facts of his case in support of this motion for bond:

First, on May 13, 2010, Petitioner appeared in the district court for arraignment on the felony complaint. This is where he made the initial request to represent himself and the court complied. The United States Supreme Court has mandated that an individual who wishes to represent himself must be made aware of the dangers and disadvantages of self-representation, so the record will establish that "he knows what he is doing and his choice is made with eyes wide open." The Court further mandated that an individual who wishes to represent himself must waive the right to counsel "knowingly and intelligently" on the record. Faretta v. California, 422 US 806 (1975). Here, Petitioner was not made aware of the dangers and disadvantages of self-representation at critical stages of the criminal prosecution: the initial arraignment, preliminary examination, and circuit court arraignment on the felony information. In deciding the issue, the Michigan Court of Appeals correctly held that Petitioner's "affirmation to the district court that he would be representing himself, was not a valid waiver of his right to counsel," but then erred in finding that "...the deprivation of counsel for defendant at the arraignment on the information was harmless." The Court did not address the initial arraignment and preliminary exam in its opinion. Nonetheless, the error was not harmless. Because where as here, there is no record support for the initial waiver of the right to counsel, and no trial court determination as to the propriety of the waiver on the record, relief is warranted on this Sixth Amendment claim on the merits (Arguments I of the Petition, pp 48-54). See Fowler v. Collins, 253 F.3d 244, 249 (CA 6, 2001), citing Johnson v. Zerbst, 304 US 458, 465 (1938).

Second, Petitioner represented himself at trial. During trial, he was shackled with an ankle-to-hip restraint without a trial court determination for why he was shackled. The Fifth and Fourteenth Amendments prohibit the use of physical restraints visible to the jury absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial. Deck v. Missouri, 544 U.S. 622, 629 (2005); Holbrook v. Flynn, 475 US 560, 567 (1986). Here, the Michigan Court of Appeals correctly held that the trial court "abused its discretion when it required Petitioner to wear the device," but then erred in failing to consider that the jurors may have saw the restraint. The Court also erred when it failed to remand for an additional hearing so jurors could testify to their awareness of Petitioner's shackles, and substituted its own opinion for that of the jury. Regardless, if it can be determined through further fact-finding that jurors were aware of Petitioner's shackles during trial, relief would be warranted on this Due Process claim on the merits (Argument II of the Petition, pp 55-62). See Davenport v. MacLaren, 964 F.3d 448, 459, 466-468 (CA 6, 2020).

9.  Next, Petitioner contends that there are circumstances surrounding his

health which makes this motion for bond exceptional. Specifically, Petitioner

3

contracted the coronavirus (Covid-19) here at the Lakeland Correctional Facility (LCF), in March of 2020, where over 800 prisoners out of 1400 contracted the virus. Twenty-seven prisoners died from Covid-19 at LCF. Consequently, there has been a resurgence of Covid-19 cases throughout the MDOC, and at LCF. Petitioner is susceptible to further re-infection.

10.   Petitioner is a 58 year-old African American male with underlying medical conditions: chronic obstructive pulmonary disease (COPD), hypertension, and hyperlipidemia, which makes him extremely vulnerable to further infection and even possible death from Covid-19, the flue, and other forms of pneumonia. Specifically, pneumonia caused by Methicillin Resistant Staphylococcus Aureaus (MRSA) infections. Petitioner has contracted numerous MRSA infections at LCF.[1]

11.   The State is incapable of protecting Petitioner. That is, despite the many steps the MDOC has taken to combat Covid-19 in its institutions, it has done nothing to reduce its prisoner population to allow for social distancing.[2] In fact, Petitioner cannot socially distance himself from other prisoners at LCF, because he lives in an overcrowded dormitory style housing unit, which makes for exceptional circumstances deserving of special treatment in the

---

1.   Petitioner complained of severe Pleuritic pain in August of 2020. A chest x-ray was ordered by Dr. Lizabeth Ralles on August 26, 2020. Despite Petitioner's underlying medical conditions, complaints that his symptoms had worsened, and Covid-19 being a multi-system disease, an x-ray of his chest was not taken until 10/09/2020. Consequently, on October 12, 2020, Petitioner was diagnosed with pneumonia in his lungs and prescribed Azithromycin.

2.   According to Dr. Admam Lauring, associate professor of infections disease and microbiology and immunology at the University of Michigan, "Prisons are very fertile grounds for the spread of COVID-19 because they house many people close together in poorly ventilated environments." He further opined that "the threat isn't going away anytime soon." He concluded by stating, "I think its going to be an ongoing issue with COVID because until we're able to really tackle all the problems with testing, separating people, quarantining, reducing prison density, it's always going to be a high-risk area for outbreaks like this." See Detroit Free Press, "Virus Hits Nearly Half of Inmates At A Prison" dated 08/21/2020.

4

consideration of bond. Because these housing units are breeding **petri dishes** for bacterial and viral infections, and pose a serious and significant risk to Petitioner's health;--in addition to the risk posed by the MDOC's failure to promptly seek diagnoses and treatment for his serious medical needs.

12.  Petitioner has strong family and community support, and has home and job placement.

13.  Petitioner would suffer irreparable harm each day that he would remain under a conviction (or sentence) in violation of the U.S. Constitution. Because" remedying such harm is the very essence of the writ of habeas corpus," Ward v. Wolfenberger, 340 F.Supp.2d 773, 778 (E.D. Mich. 2004), release should be granted.

14.  Petitioner incorporates by reference the documents in the Appendix and the Brief in Support of this motion.

WHEREFORE, Petitioner moves this Honorable Court to order his release on recognizance or on a reasonable bail bond pending a decision on the merits of his habeas corpus petition.

Respectfully submitted,

Dated: November 5, 2020

Steven A. Odom
In Pro Per
Lakeland Correctional Facility
141 First Street
Coldwater, Michigan 49036

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN A. ODOM, #161794,

                Petitioner,                Case No. 2:20-cv-12180

-vs-                              Judge Arthur J. Tarnow

BRYAN MORRISON, WARDEN          Magistrate Judge Anthony P. Patti

                Respondant.

_____/

## BRIEF IN SUPPORT OF MOTION FOR RELEASE ON BOND

  I.  THIS COURT SHOULD GRANT PETITIONER RELEASE ON BOND PENDING A
      DECISION ON THE MERITS OF HIS HABEAS PETITION WHERE THERE IS A
      SUBSTANTIAL CLAIM OF LAW PRESENTED AND CIRCUMSTANCES WHICH MAKE
      THE MOTION FOR BOND EXCEPTIONAL.

It is well established that a federal court may release on bond or recognizance a state prisoner while consideration of his federal issues is pending, even before Habeas Corpus is granted. Nash v. Eberlin, 437 F.3d 519, 526, n.10 (CA 6, 2006); Puertas v. Overton, 272 F.Supp.2d 621, 630 (E.D. Mich. 2003); Mapp v. Reno, 241 F.3d 221, 226 (2d Cir 2001); Landano v. Rafferty, 970 F.2d 1230, 1239 (3rd Cir 1992); Moore v. Egeler, 390 F.Supp 205, 207 (E.D. Mich. 1975).

Michigan federal courts have granted release on bond to Habeas Corpus petitioners with life sentences for murder. See Clark v. Hoffner, 2020 U.S. Lexis 61577 (E.D. Mich., Case No. 16-11959, Unpublished Opinion dated April 8, 2020); Newman v. Metrish, 300 Fed. Appx. 3432 (CA 6, 2008); Hargrave-Thomas v. Yukins, 450 F.Supp.2d 711, 716-717 (E.D. Mich. 2006) [murder defendant and Habeas Corpus petitioner released on bond issued by federal court for 4 years].

To qualify for release on bond pending a decision on the merits of his habeas petition, Petitioner must show: (1) a substantial claim of law based on

6

the facts surrounding his petition, and (2) the existence of "some circumstances making the [motion for bond] exceptional and deserving of special treatment in the interest of justice." Aronson v. May, 85 S.Ct 3, 7 (1964); Dotson v. Clark, 900 F.2d 77, 79 (CA 6, 1990).

First, Petitioner contends that Issue I of his petition, the denial of counsel at critical stages of the prosecution, where there was no valid waiver of the constitutional right, is a substantial Sixth Amendment claim of law based on the facts of his case that warrant consideration of bond. See Faretta v. California, 422 US 806 (1975); Fowler v. Collins, 253 F.3d 244, 249 (CA 6, 2001).

Further, Petitioner contends that Issue II of the petition, restraining him during trial without cause, is another substantial Due Process claims of law based on the facts of his case that warrant consideration of bond. See Davenport v. Maclaren, 964 F.3d 448, 459, 466-468 (CA 6, 2020).

Second, Petitioner contends that there are circumstances surrounding his health which makes his motion for bond exceptional. Specifically, Petitioner contracted the coronavirus (Covid-19) here at the Lakeland Correctional Facility (LCF), in March of 2020, where over 800 prisoners out of 1400 contracted the virus. Twenty-seven prisoners died from Covid-19 at LCF. Consequently, there has been a resurgence of Covid-19 infections throughout the MDOC, and at LCF. This jeopardizes Petitioner's health.

Petitioner is a 58 year-old African American male with underlying medical conditions: chronic obstructive pulmonary disease (COPD), hypertension, and hyperlipidemia, which makes him extremely vulnerable to further infection and even possible death from Covid-19, the flue, and other forms of pneumonia. Specifically, pneumonia caused by Methicillin Resistant Staphylococcus Aureaus (MRSA) infections. Petitioner has contracted numerous MRSA infections while

housed at LCF.

To be sure, keeping Petitioner confined pending a decision on the merits of his habeas petition during what medical experts have projected to be a deadly "Twindemic" (coronavirus/influenza) season this fall/winter, presents a serious and significant risk to Petitioner's health, which make for the existence of circumstances making the motion for bond in this case exceptional and deserving of special treatment in the interest of justice. See Puerta v. Overton, 272 F.Supp.2d at 631; Clark v. Hoffner, 2020 US Dist Lexis 61577 at *10-*11.

Petitioner is unlikely to abscond while on bond, because to abscond would only terminate this habeas corpus proceeding to the sever prejudice of Petitioner, who strongly believe in his likelihood of success in this action.

Here, the Respondent has failed to file a responsive pleading as ordered by the Court, or file a motion for an extension of time in which to respond. This disregard for the Court's order and for Petitioner's right to a swift resolution of his habeas claims poses a threat to the orderly administration of justice in this case. See Fay v. Noia, 372 US 391, 400 (1963); Presier v. Rodriquez, that habeas corpus claims should receive a "swift, flexible, and summary determination." 411 US 475, 495 (1973).

There is no harm in releasing Petitioner unless one can find that he is likely to abscond.

Petitioner has no criminal history during his incarceration of the last 11 years. He has wide-ranging support from the community. And the attached Michigan Department of Corrections documents establish Petitioner's suitability for release.

The reports indicate the following. Petitioner has maintained steady employment with positive work reports. He has also completed numerous self-

help programs, in addition to cage your rage.

Although Petitioner has a lengthy sentence, 360 to 720 months, he was initially sentenced to 220 to 420 months. If that sentence were to be reinstated, Petitioner would immediately be eligible for Level I placement within the MDOC. Petitioner is currently confined in a Level II facility.

The remedy of Habeas Corpus should not be rendered worthless by Petitioner's continued incarceration. See Moore v. Egler, supra.

That is, this court should not ignore that the evidence against Petitioner was not overwhelming. Ms. Ritchie, the store clerk, could not say that Petitioner was the robber and could not say that the robber used binoculars as part of the robbery. (T1, 275-276). In fact, after the preliminary exam, Ms. Ritchie contacted the Detective in charge of the case because she was surprised that Petitioner was the person accused of the robbery. (T1, 272-273). Ms. Dowker, the customer inside the store at the time of the robbery, could not say with 100% certainty that the robber was Petitioner. (T1, 300).

The Detective in charge of the case, Laura Burke, found a pair of binoculars in the snow in the parking lot of the Check-N-Go. (T2, 27-28). They weren't covered in snow, but Detective Burke had to dig through in order to figure out what the mound was in the parking lot. (T2, 49). When Detective Burke brought the small black set of binoculars into the Check 'n Go, Ms. Dowker could not be sure, but thought they were the item in the robber's hands, but could not see the whole thing. (T1, 290-291, 299-300). Ms. Ritchie never said the binoculars is what the person had in their hand. (T1, 274).

Rebecca Preston, a DNA analyst at Bode, testified that she generated a DNA profile from the binoculars and found a mixture of three or four contributors, including a major male contributor. (T2, 292). Ms. Preston opined that Petitioner's DNA matched the major male contributor on the binoculars with a

reasonable scientific certainty. (T2, 299). However, Ms. Preston never worked on Kinship analysis, even though it is possible. (T2, 304, 316). She stated that in a mixed sample its important to know the other source of the family members, but Bode statistics only state the possibility of randomly selecting an unrelated individual. (T2, 316-317). Ms. Preston never worked on a case with a mixed DNA sample containing DNA from a father and son. (T2, 327).

Ms. Williams, the mother of Petitioner's two sons, and the State's star witness, testified that on the night of January 14, 2009, Petitioner came to her house acting nervous and scared. (T2, 84). He said that in the morning, he wore all black, with his facer covered, and he robbed the Check 'n Go. (T2, 84-86). Petitioner stated that he took about $3,000, and that he used binoculars, but dropped them when he came out. (T2, 86-87). When Ms. Williams testified at the preliminary exam, she stated that Petitioner did not tell her of any money recovered. (T2, 120-122). She remembered this fact after the preliminary exam. (T2, 120-122). In her report to a police tip line to report the robbery, Ms. Williams did not mention any binoculars. (T2, 163). However, in an interview with Detective Burke, she mentioned the binoculars, before they were public knowledge. (T2, 172).

Ms. Williams recognized the binoculars because her grandchildren used to come to the house to play with them. (T2, 86-87). She had not seen them since the date of the incident. (T2, 91).

Ms. Williams did not report this information to police because she was concerned for her safety. (T2, 91). She reported Petitioner's admission a few months later after their relationship continued to deteriorate. (T2, 91-93). On June 19, 2009, she obtained a Personal Protection Order. (T2, 94). When Petitioner failed to comply with the no contact order, Ms. Williams reported him and his agent arrested him. (T2, 95). In October, Ms. Williams then

reported Petitioner's statements because his incarceration made her feel safe. (T2, 98). Although Ms. Williams made several complaints to police and testified at a parole revocation hearing, she never told police about the robbery prior to October 2009. (T2, 142, 158).

Ms. Williams acknowledged that she heard that Petitioner's home had been burglarized and some of his property ended up in her son Shaun's home. (T2, 148). Martha Dunny, Petitioner's landlord mistakenly provided Shaun Odom, Petitioner's son, a key to his apartment on July 8, 2009. (T3, 134-135). Douglas Paschall, the vice-president of Joe-Mar Realty confirmed that nobody had permission to give out Petitioner's key. (T3, 149). He saw somebody in Petitioner's apartment and spoke to his mother and sister about the incident. (T3, 146-147). Deputy Grant Toth investigated the burglary complaint of Petitioner's residence on July 12, 2009. (T3, 173-176). The case remained opened, with nobody charged. (T3, 173-176). Shirley Odom, Petitioner's mother received a message from Shaun Odom, where he said, "if my dad wanted to play like that, I have some evidence that will put him away for life." (T3, 289).

Finally, at the time of the offense, Petitioner had to wear a GPS monitoring device. (T2, 176-177; T3, 6-7). The monitoring device tracked Petitioner' s movements through global positioning, or as a backup through cell tower pining if the signal is lost. (T3, 9-12).

Gregory Roach, the custodian of the records for the GPS program, testified over Petitioner's timely objection that he examined the records from Petitioner's GPS device on January 14, 2009, the morning of the robbery. (T3, 13-27). At 7:30 a.m., the device traced Petitioner to his home zone. (T3, 29). At 8:35 a.m., he was at the I-94 Main Street exit near a shopping mall, and at 8:52 a.m., he approached the Michigan Football Stadium. (T3, 31-32). At 9:09 a.m., the device traced an address on Kingsley Street. (T3, 32, 36).

Petitioner's mother lives at 114 W. Kingsley street. At 9:09 a.m., the device lost GPS coverage, but a signal bounced off a cell tower at South Main and Washington. (T3, 32-33). When an individual goes off line and is no longer being tracked by GPS, there is a backup system that pings off the nearest cell tower. (T3, 12). At 10:00 a.m., there was still no GPS coverage, but a cell signal bounced off a tower on I-94, between Liberty and Jackson. (T3, 33). At 10:45 a.m., the GPS signal showed Petitioner returned to his apartment in Ypsilanti. (T3, 34-35).

Mr. Roach confirmed that if a cell tower is busy or has too many hits, then a signal would bounce off the next closest tower. (T3, 48). Mr. Roach however, did not have knowledge about location of cell towers. (T3, 44-45). All the information that he retains comes from Pro-Tech. (T3, 47). Mr. Roach's agency uses Pro-Tech sofware and his staff and Pro-tech put together the disk he used. (T3, 16).

The evidence of Petitioner' s location in range of the crime scene removed any doubt as to his guilt and provided important corroboration to evidence that could have otherwise been fabricated. Petitioner Odom's son matched the description of the perpetrator, and he could have left the binoculars with Petitioner's DNA at the scene. Ms. Williams became fearful of Petitioner and had a motive to both fabricate his confession and protect her son from both the Check 'n Go robbery, and the burglary of Petitioner's home. Only two pieces of evidence disprove the fabrication theory and offer independent corroboration -- (1) Petitioner's proximity to the crime scene at the time of the robbery, and (2) the fact that the GPS device was disabled immediately before, after, and during the robbery. Absent the inadmissible hearsay offered by Gregory Roach, the jury hears neither of these facts. See **Arguments IV & V** of the petition.

Petitioner would have no incentive to escape and nullify the possibility

of a new trial where the evidence was not overwhelming against him. In fact, were he to have proper representation, a conviction would seem close to impossible.

Based on this record, this Court should exercise its discretion and release Petitioner on recognizance or reasonable money bond pending a decision on his federal constitutional claims.

## RELIEF SOUGHT

WHEREFORE, Petitioner moves this Honorable Court to order his release on recognizance or on a reasonable bail bond pending a decision on the merits of his habeas corpus petition.

Respectfully submitted,

Dated: November 5, 2020

Steven A. Odom
In Pro Per
Lakeland Correctional Facility
141 First Street
Coldwater, Michigan 49036

13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN A. ODOM, #161794,

                Petitioner,                Case No. 2:20-cv-12180

-vs-                                 Judge Arthur J. Tarnow

BRYAN MORRISON, WARDEN          Magistrate Judge Anthony P. Patti

                Respondent.

_____/

APPENDIX TO PETITIONER'S MOTION
FOR RELEASE ON BOND

A.  Petitioner's Medical Records

B.  MDOC & LCF Postive/Negative Covid-19 Reports

C.  Petitioner's Work & Program Reports

D.  Declaration of Sylvia Carroll (Home Placement)

## A P P E N D I X  "A"

### PETITIONER'S MEDICAL RECORDS

1. COVID-19 POSITIVE TEST RESULT DATED: 04/22/2020
2. MDOC CLINICAL ENCOUNTER – ADMINISTRATIVE NOTE DATED: 02/02/2020
3. CLINICAL MRSA DIAGNOSES DATED: 11/02/2017
4. CLINICAL MRSA DIAGNOSES DATED: 01/26/2018
5. LETTER TO GOVERN GRETCHEN WHITMER CONCERNING PETITIONER'S HEALTH DATED OCTOBER 18, 2020

# Department of Corrections
## Lab Report

| | | | |
|---|---|---|---|
| Offender Name: | Odom, Steven Aderrick | | Off #:   0161794 |
| Date of Birth: | 08/01/1962 | Sex: M | |
| Report Date: | 04/22/2020 | Provider: HILL, E'COE | |

| Test Name | Result | Reference Range | Lab |
|---|---|---|---|

COMMENTS:
SARS COV 2 RNA, RT PCR (COVID 19) {COV19}

| | | | |
|---|---|---|---|
| SARS COV 2 RNA, RT PCR | POSITIVE | NEGATIVE | |

THESE RESULTS ARE FOR THE DETECTION OF SARS-COV-2 RNA. DETECTED
RESULTS ARE INDICATIVE OF THE PRESENCE OF SARS-COV-2 RNA.
CLINICAL CORRELATION WITH PATIENT HISTORY AND OTHER DIAGNOSTIC
INFORMATION IS NECESSARY TO DETERMINE PATIENT INFECTION STATUS.
POSITIVE RESULTS DO NOT RULE OUT BACTERIAL INFECTION OR CO-
INFECTION
WITH OTHER VIRUSES.
NEGATIVE RESULTS DO NOT PRECLUDE SARS-COV-2 INFECTION AND
SHOULD NOT
BE USED AS THE SOLE BASIS FOR PATIENT MANAGEMENT DECISIONS.
NEGATIVE RESULTS MUST BE COMBINED WITH CLINICAL OBSERVATIONS,
PATIENT HISTORY AND EPIDEMIOLOGICAL INFORMATION.
IMPROPER SPECIMEN COLLECTION CAN RESULT IN POSSIBLE FALSE
NEGATIVE RESULTS.

# Michigan Department of Corrections
## Clinical Encounter - Administrative Note

| | | | | |
|---|---|---|---|---|
| Offender Name: | Odom, Steven Aderrick | | Off #: | 0161794 |
| Date of Birth: | 08/01/1962 | Sex: M | Facility: | LCF |
| Note Date: | 02/02/2020 13:34 | Provider: Hill, ECoe [EH1] NP | Unit: | B4 |

Chart Review/Update encounter performed at Non Patient Contact.
**Administrative Notes:**

**ADMINISTRATIVE NOTE  1**       **Provider:** Hill, ECoe [EH1] NP

Medication Renewal from expiring med report.

**ASSESSMENTS:**

Lumbago with sciatica, unspecified side, M54.40 - Current, Chronic, Initial

Chronic obstructive pulmonary disease, unspecified, J44.9 - Current, Chronic, Initial

Enlarged prostate without lower urinary tract symptoms, N40.0 - Current, Chronic, Initial

Gastro-esophageal reflux disease without esophagitis, K21.9 - Current, Chronic, Initial

Hyperlipidemia, unspecified, E78.5 - Current, Chronic, Initial

Risk Score Low - 6 to 12 Months, RS Low - Current, Chronic, Initial

**Renew Medication Orders:**

| Rx# | Medication | Order Date | Start Date | Quantity | Prescriber Order |
|---|---|---|---|---|---|
| 5004788 3 | ALBUTEROL  HFA (8.5GM) 90 MCG INHA | 02/02/2020 13:34 | 02/02/2020 | 1 | 1 PUFF BY MOUTH EVERY 4-6 HOURS AS NEEDED. KITE FOR REFILL, LIMIT OF 2 CANISTERS/6 MONTH x 180 day(s) |
| | **Indication:** Chronic obstructive pulmonary disease, unspecified | | | | |
| 5004792 9 | APAP 325MG TABS | 02/02/2020 13:34 | 02/02/2020 | 180 | TAKE 1-2 TABS  BY MOUTH THREE TIMES DAILY AS NEEDED KOP x 180 day(s) -- May refill x 5 |
| | **Indication:** Lumbago with sciatica, unspecified side | | | | |
| 5004806 8 | Simvastatin Oral Tablet 20 MG | 02/02/2020 13:34 | 02/02/2020 | | TAKE 1 TAB BY MOUTH AT BEDTIME - KOP x 180 day(s) |
| | **Indication:** Hyperlipidemia, unspecified | | | | |

| | | | |
|---|---|---|---|
| **Co-Pay Required:** | No | **Cosign Required:** No | |
| **Telephone/Verbal Order:** | No | | |
| **Standing Order:** | No | | |

Completed by Hill, ECoe [EH1] NP on 02/02/2020 13:43

**ODOM, STEVEN A**
LCF
, MI
Person Number: 5438
Sex: M
DOB: 8/1/1962

**COMMENTS (Collection Date: 11/02/2017 16:45, Status: )**

| Component | Result | Units | Flag | Range | Comment |
|---|---|---|---|---|---|
| COMMENTS | PANIC VALUE RESULT | | | | PANIC CALLED<br>"MRSA" CALLED AND FAXED TO HERSHEY AT 2:50PM BY WENDY S |

**WOUND CULTURE (Collection Date: 11/02/2017 16:45, Status: )**

| Component | Result | Units | Flag | Range | Comment |
|---|---|---|---|---|---|
| WOUND CULTURE | SEE RESULT COMMENTS BELOW | | | | WOUND CULTURE REPORT<br>SOURCE: WOUND<br>SITE: GENITAL<br>CULTURE RESULTS:<br>ORGANISM ISOLATED #1<br>mecA-MEDIATED RESISTANT STAPHYLOCOCCUS<br>Beta Lactamase positive<br>Methicillin Resistant Staphylococcus<br>RIFAMPIN SHOULD NOT BE USED ALONE FOR CHEMOTHERAPY<br>ORGANISM ISOLATED: #1 MRSA (MRSA)<br>QUANTITY: 3+<br>Antimicrobial            MRSA(1)<br>--------------------  ------------------------------------<br>Clindamycin             S  <=0.5<br>Daptomycin              S  <=1<br>Erythromycin            R  >4<br>Gentamicin              S  <=1<br>Levofloxacin            R  4<br>Linezolid               S  2<br>Moxifloxacin            I  1<br>Oxacillin               R  >2<br>Penicillin G            R  >1<br>Rifampin                S  <=0.5<br>Trimethoprim/Sulfame    S  <=0.5/9.5<br>Tetracycline            S  <=0.5<br>Vancomycin              S  1 |

**WOUND CULTURE (Collection Date: 11/02/2017 16:45, Status: )**

| Component | Result | Units | Flag | Range | Comment |
|---|---|---|---|---|---|
| WOUND CULTURE | SEE RESULT COMMENTS BELOW | | | | WOUND CULTURE REPORT<br>SOURCE: WOUND<br>SITE: GENITAL<br>CULTURE RESULTS:<br>ORGANISM ISOLATED #1<br>mecA-MEDIATED RESISTANT STAPHYLOCOCCUS<br>Beta Lactamase positive<br>Methicillin Resistant Staphylococcus<br>RIFAMPIN SHOULD NOT BE USED ALONE FOR CHEMOTHERAPY<br>ORGANISM ISOLATED: #1 MRSA (MRSA)<br>QUANTITY: 3+<br>Antimicrobial            MRSA(1)<br>--------------------  ------------------------------------<br>Clindamycin             S  <=0.5<br>Daptomycin              S  <=1 |

```
Erythromycin           R   >4
Gentamicin             S   <=1
Levofloxacin           R   4
Linezolid              S   2
Moxifloxacin           I   1
Oxacillin              R   >2
Penicillin G           R   >1
Rifampin               S   <=0.5
Trimethoprim/Sulfame   S   <=0.5/9.5
Tetracycline           S   <=0.5
Vancomycin             S   1
```

```
RUN DATE: 01/29/18              Community Health Center of Branch County              PAGE 1
RUN TIME: 0805                  274 East Chicago Street - Coldwater, MI 49036
                                Phone: (517)279-5476 / Fax: (517)279-5372
```

**DOCTOR**

SUDHIR,BHAMINI MD (LAKE C CF)

| | |
|---|---|
| Name: ODOM,STEVEN A | SUDHIR,BHAMINI MD (L |
| Acct#: V00002314756   DOB/AGE/SEX:08/01/1962 55   M | 141 FIRST ST |
| Unit#: M000444078   Location: ER | |
| Reg: 01/26/18   Room/Bed: | COLDWATER                MI 49036 |
| Attending Phys: | Other Phys: |
| Family Phys:   SUDHIR,BHAMINI MD (LAKE C CF) | Subm. Phys: KNOBLOCH,DANIEL E (ER) |

```
Specimen: 18:M0000398R   RES   Collected: 01/26/18-1910   Received: 01/26/18-1931
  Source: FINGER               Sp Descrip:                 Completed: 01/28/18-0921
```

| Procedure | Result | Site |
|---|---|---|

**WOUND CULTURE**  Preliminary
     Direct Smear:          MODERATE WBCS
                          MODERATE EPITHELIAL CELLS
                          MODERATE GRAM POSITIVE COCCI IN CLUSTERS

     Organism 1          **STAPHYLOCOCCUS AUREUS-MRSA**
                          Quantity: Moderate
                          CLSI Recommended Antibiotic Therapy
                          See sensitivity results to ensure appropriate therapy.
                          Non-MRSA:Nafcillin, Cefazolin,
                          Trimethoprim-Sulfamethoxazole
                          MRSA 1st Line:Vancomycin
                          MRSA 2nd Line:Trimethoprim-Sulfamethoxazole,
                          Ceftaroline,Linezolid,Doxycycline,Rifampin (not used
                          alone)
                          MRSA Urine:Nitrofurantoin,
                          Trimethoprim-Sulfamethoxazole

**1. STAPHYLOCOCCUS AUREUS-MRSA**

| | M.I.C. | RX | Route | Dose |
|---|---|---|---|---|
| AMPICILLIN/SULBACTAM (UNASYN) | | R | | |
| CEFAZOLIN (ANCEF/KEFZOL) | | R | | |
| CIPROFLOXACIN (CIPRO) | <=0.5 | S | PO | 500-750mg BID |
| | | S | IV | 200-400mg Q12h |
| CLINDAMYCIN (CLEOCIN) | 0.25 | S | PO | 150-300mg Q6h |
| | | S | IV | 900mg Q8h |
| * DOXYCYCLINE | <=0.5 | S | | |
| ERYTHROMYCIN (PEDIAMYCIN) | >=8 | R | PO | 250-500mg Q6h |
| | | R | IV | .5-1g Q6h |
| GENTAMICIN (GARAMYCIN) | <=0.5 | S | IVMDD | Load 2mg/kg;1.7mg/kg Q8h |
| | | S | IV OD | 5.1mg/kg Q24h |
| LEVOFLOXACIN (LEVAQUIN) | <=0.12 | S | PO/IV | 250-750mg Q24h |
| LINEZOLID (ZYVOX) | 2 | S | PO/IV | 600mg Q12h |
| OXACILLIN (NAFCILLIN) | >=4 | R | IV/IM | 1-2g Q4h |
| RIFAMPIN (RIFADIN, RIMACTANE) | <=0.5 | S | PO/IV | Should not be used alone |
| * TIGECYCLINE | <=0.12 | S | IV | See Reference Guide |
| TRIMET/SULFA (SEPTRA, BACTRIM) | <=10 | S | PO | 160mg/800mg Q12h |
| | | S | IV | 8-10mg/kg TMP Daily |
| VANCOMYCIN (VANCOCIN) | <=0.5 | S | IV | 15mg/kg Q12h |

** CONTINUED ON NEXT PAGE **

```
RUN DATE: 01/29/18              Community Health Center of Branch County        PAGE 2
RUN TIME: 0805                  274 East Chicago Street - Coldwater, MI 49036
                                      Phone: (517)279-5476 / Fax: (517)279-5372
```

                                            DOCTOR
                              SUDHIR,BHAMINI MD (LAKE C CF)

| Patient: ODOM,STEVEN A | V0000231475G | (Continued) |
|---|---|---|

Specimen: 18:M0000398R     Collected: 01/26/18-1910   Received: 01/26/18-1931     (Continued)

| Procedure | Result | Site |
|---|---|---|

WOUND CULTURE   Preliminary   (continued)
    * Denotes antibiotic NOT in the formulary at the Community
    Health Center of Branch County.

** END OF REPORT **

Steven A. Odom, #161794
Lakeland Correctional Facility
141 First Street
Coldwater, Michigan 49036

October 18, 2020

The Honorable Gretchen Whitmer
Governor
George W. Romney Bldg.
111 S. Capitol Ave
Lansing, Michigan 48909

        Re: Health Care

Dear Governor Whitmer:

        I am a U.S. Citizen and a native of Ann Arbor, Michigan. I write to your
office for help; I believe my health (and possibly my life) is being placed at
risk by the Health Care (HC) staff here at the Lakeland Correctional Facility
(LCF) in Coldwater, Michigan. Please allow me to explain, seriatim:

        First, I contracted the coronavirus (Covid-19) here at LCF in March of
2020, where over 800 prisoners out of 1400 contracted the virus. Twenty-three
prisoners died (if not more) from Covid-19 at LCF. Nevertheless, in August I
complaint of sever Pleuritic pain to HC. A chest x-ray was ordered by a Dr.
Lizabeth Ralles on August 26, 2020. However, despite (a) complaints that my
symptoms had worsened; (b) that I have underlying medical conditions: Chronic
Obstruction Pulmonary Disease (COPD), Hypertension, and Hyperlipidemia; and (c)
Covid-19 being a multi-system disease, an x-ray was not taken of my chest until
October 9, 2020. Consequently, on 10/12/2020, I was diagnosed with pneumonia and
prescribed Azithromycin by Nurse Practitioner Coe E. Hill. This infection was
not detected in any of the labs drawn on me on 10/06/2020.

        Second, on October 16, 2020, I wrote HC and advised that the medication
wasn't working and that my symptoms were getting worse. Specifically, my
breathing was becoming more labored and painful. That next morning I could
hardly breath and reported my symptoms to my housing unit officer, C/O Clayman,
who said he would call HC. Ten minutes later, I went back to the officer's
station and complained that my symptoms were worsening. At this point, I was not
provided any medical care.

        I then got dressed and attempted to walk to HC. On the way I was stopped by
prisoners Jones and White and asked, "are you all right?" I explained that I was
dizzy, losing my vision, and having difficulty breathing. They thought I might
be diabetic and advised that maybe I needed to get something to eat, so they
escorted me to the dinning hall. After I got my meal and began to exit the
dinning hall I lost my vision and collapsed. Shortly thereafter I found myself
in HC where my vitals were being taken. I was then asked what happened and I
explained. The attending nurse then went and spoke with my Medical Provider
(MP), NP Hill, who ordered a urin sample. NP Hill did not have my blood sugar
levels checked or have me sent to an outside hospital for further diagnoses and
treatment. In fact, NP Hill ordered that I return back to my housing unit

despite still having problems breathing and acute pain in my right flank and kidney area.

Third, in addition to contracting Covid-19, I have also contracted due to the overcrowded living conditions here at LCF, numerous Methicillin Resistant Staphlococcus Aureaus (MRSA) infections. MRSA is a serious life threatening medical condition that can cause pneumonia. In fact, I know a number of prisoners who have died from MRSA related pneumonia here at LCF, because HC failed or refused to timely diagnose and treat their breathing complaints.

Governor Whitmer, prisoners have died and will continue to die here at LCF during this pandemic if something isn't done to address (a) the delay and/or denial of prisoner treatment to save cost within the MDOC, and (b) the medical malpractice and incompetence of medical staff within the MDOC. Because God knows I don't want to be the next preventable casualty here at LCF. Therefore, I ask that you intervene in this matter and order, or have the Director of the MDOC order, that I be seen immediately by an outside Doctor to diagnose and treat my post Covid-19 and MRSA related symptoms.

I thank you for your time and prompt attention to this matter. Awaiting your reply, if any, I remain...

Sincerely,

Steven A. Odom

cc:  The Honorable Garlin Gilchrist II, Lt. Governor
     The Honorable Jeff Irwin, State Senator, D-Ann Arbor
     The Honorable Rebekah Warren, State Representative, D-Ann Arbor
     Dr. Joneigh Khaldun, Chief Medical Officer, Health & Human Services
     Ms. Heidi Washington, Director, MDOC
     Mr. Bryan Morrison, Warden, LCF
     Health Unit Manager, LCF
     Mr. Doug Tjakes, Humanity for Prisoners
     Ms. Shirley J. Odom, Prisoner's Mother
     Ms. Claudette Ballard, Prisoner's Wife
     Mr. Dan Manville, Clinical Law Professor, MSU Clinical Law Program
     ACLU of Michigan
     Southern Poverty Law Center
     60 Minute News
     CNN News
     Detroit Free Press
     Detroit News

## A P P E N D I X  "B"

### MDOC COVID-19 POSITIVE/NEGATIVE REPORTS

1.  MDOC REPORTED COVID-19 RESULTS AS OF AUGUST 5, 2020
2.  SEPTEMBER 2020 (LCF) COVID-POSITIVE REPORT
3.  OCTOBER 9, 2020 MDOC COVID-POSITIVE REPORT
4.  OCTOBER 19, 2020 MDOC COVID-POSITIVE REPORT
5.  NOVEMBER 2, 2020 MDOC COVID-POSITIVE REPORT

|  | Total Tested | |  |
|---|---|---|---|
|  | 37,461 | |  |
| Total Positive |  |  | Total Negative |
| 4,037 |  |  | 33,424 |

| Total Recovered | Total in Step Down | Active Cases | Cases Now Paroled* | Deaths |
|---|---|---|---|---|
| 3,595 | 15 | 168 | 191 | 68 |

| Location | Prisoners Tested | Prisoners Confirmed | Prisoners Negative | Prisoner Deaths |
|---|---|---|---|---|
| Alger Correctional Facility | 871 | 0 | 871 | |
| Baraga Correctional Facility | 814 | 0 | 814 | |
| Bellamy Creek Correctional Facility | 1,730 | 1 | 1,729 | |
| Carson City Correctional Facility | 2,364 | 1 | 2,363 | |
| Central Michigan Correctional Facility | 2,410 | 4 | 2,406 | |
| Charles E. Egeler Reception and Guidance Center | 1900 | 377 | 1,523 | 6 |
| Chippewa Correctional Facility | 2,310 | 0 | 2,310 | |
| Cooper Street Correctional Facility | 1,504 | 1 | 1,503 | |
| Detroit Rentry Center | 84 | 24 | 60 | 2 |
| Duane Waters Health Center | 144 | 18 | 126 | 2 |
| Earnest C. Brooks Correctional Facility | 1,176 | 0 | 1,176 | |
| G. Robert Cotton Correctional Facility | 1,694 | 772 | 922 | 4 |
| Gus Harrison Correctional Facility | 1,922 | 707 | 1,215 | 4 |
| Ionia Correctional Facility | 644 | 2 | 642 | |
| Kinross Correctional Facility | 1,518 | 1 | 1,517 | |
| Lakeland Correctional Facility | 1,443 | 815 | 628 | 23 |
| Macomb Correctional Facility | 1,160 | 241 | 919 | 5 |
| Marquette Branch Prison | 888 | 0 | 888 | |
| Michigan Reformatory | 1,196 | 1 | 1,195 | |
| Muskegon Correctional Facility | 1419 | 155 | 1,264 | |
| Newberry Correctional Facility | 1,052 | 1 | 1,051 | |
| Oaks Correctional Facility | 1,031 | 9 | 1,022 | |
| Parnall Correctional Facility | 1,526 | 297 | 1,229 | 10 |
| Richard A. Handlon Correctional Facility | 1,184 | 0 | 1,184 | |
| Saginaw Correctional Facility | 1,419 | 4 | 1,415 | |
| St. Louis Correctional Facility | 1,138 | 0 | 1,138 | |
| Thumb Correctional Facility | 915 | 303 | 612 | 7 |

Good Afternoon,

Due to a recent COVID positive prisoner case, we are testing all LCF staff and prisoners.• We are testing all staff and prisoners, weekly, for at least 14 days from the last identified COVID positive test.• We will begin week one of testing this week.

Staff testing will begin on Wednesday, September 30, 2020.• Staff testing will again occur on October 2nd and all prisoner testing will take place on Saturday, October 3, 2020.• Limited movement will be allowed during facility testing.

The National Guard will assist with testing. The test will be an anterior nare that is not as invasive as previous tests.

If you have previously tested positive within the last 90 days you will not be tested again this week.••

Failure to complete the test, will require you to be placed in medical quarantine.

Take care and stay safe,

A/Deputy Warden Chrisman

The Michigan Department of Corrections is committed to providing the prisoner population with up-to-date information as it relates to our efforts in dealing with the coronavirus disease 2019 (COVID-19).

**Prisoner cases**

On Oct. 9, there were 23 positive cases and 23 negative results to report.

The 20 positive cases included:

Marquette Branch Prison - 20

Lakeland Correctional – 1

Thumb Correctional – 1

Charles Egeler Reception & Guidance – 1

The 23 negative results were from Charles Egeler Reception & Guidance.

**Video Visitation update**

The MDOC's Video Visitation Pilot reached an important milestone Friday, October 9, 2020: Online scheduling of video visits at Parnall Correctional Facility (SMT) is open.

For prisoners at SMT, this means that Visitors on your Approved Visitor List will be able to request a video visit.

Here are the basic steps that an Approved Visitor should follow:
Step 1: The Approved Visitor should navigate to the GTL Visitor Web site:
https://midoc.gtlvisitme.com/app
Step 2: The Approved Visitor will need to create an account on the GTL Visitor Web Site and request to visit the prisoner at SMT.
Step 3: Once approved on the GTL site, the Approved Visitor will then be able to request a scheduled video visit for prisoners at SMT.

**Length of video visits:** 20 minutes (with 10 minutes between).
**Cost of video visits:** The cost of a scheduled twenty (20) minute video visit is $3.20.  The video visit must be paid for in advance by the person scheduling the visit.
**Scheduling window:** Video Visits may be scheduled no less than 72 hours in advance of the scheduled visit and not after 48 hours.

The Michigan Department of Corrections is committed to providing the prisoner population with up-to-date information as it relates to our efforts in dealing with the coronavirus disease 2019 (COVID-19).

**Prisoner cases**
On Oct. 19, there were 201 positive cases and 15 negative results to report.

The 201 positive cases included:

Marquette Branch Prison - 98

Newberry Correctional - 49

Richard A. Handlon Correctional - 47

Cooper Street Correctional - 4

Saginaw Correctional - 2

Lakeland Correctional - 1

The 15 negative results included:

Women's Huron Valley Correctional - 9

Thumb Correctional - 5

Carson City Correctional – 1

**Video Visitation update**

Today, video visitation launched at Duane Waters Health Center/RGC's C-Unit as part of the MDOC's video visitation pilot.

Video visiting opened at Parnall Correctional Facility on Oct. 12, and at G. Robert Cotton Correctional Facility on Oct. 16.

As a reminder, here are the basic steps that an approved visitor should follow:

**Step 1:** The Approved Visitor should navigate to the GTL Visitor Web site: https://midoc.gtlvisitme.com/app



The Michigan Department of Corrections is committed to providing the prisoner population with up-to-date information as it relates to our efforts in dealing with the coronavirus disease 2019 (COVID-19).

**Prisoner cases**
On Nov. 2, there were 27 positive cases and 54 negative results to report.

The 27 positive cases included:

Chippewa Correctional – 13

Alger Correctional – 7

Muskegon Correctional – 3

Marquette Branch Prison – 2

Newberry Correctional – 2

The 54 negative results included:

Charles Egeler Reception & Guidance – 51

Women's Huron Valley Correctional – 2

Cooper Street Correctional – 1

**MDOC Partnership with Department of State to Help Provide Thousands of Returning Citizens With State ID**

In June, the Michigan Department of State and the MDOC announced a joint initiative to help returning citizens reintegrate into their communities by providing them with a driver's license or state ID upon their parole.

The department had made vital documents a priority under Director Washington, and in 2019 when Secretary of State Jocelyn Benson took office, she made it a priority for her department as well. Through the initiative, the MDOC obtains required documents, paperwork and photos for individuals designated for parole and then sends that info directly to MDOS, where either a driver's license or state ID will be processed. The MDOC partially funds a position at MDOS who is dedicated to processing the paperwork sent by the MDOC.

# A P P E N D I X  "C"

## PETITIONER'S MDOC WORK REPORTS

1.  PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION DATED: 07/06/2020
2.  MDOC (LCF) PRISONER WORKER SAFETY TRAINING RECORD DATED: 10/02/2017
3.  PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION DATED: 08/18/2017
4.  PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION DATED: 12/28/2016
5.  PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION DATED: 06/19/2016
6.  PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION DATED: 11/07/2012

## PETITIONER'S SELF-HELP PROGRAMING

7.  2016 MCF 12-WEEK ETHICS AND STEWARDSHIP PROJECT LETTER OF RECOGNITION
    (CERTIFICATE);
8.  AUGUST 11-12 2016 "THE GLOBAL LEADERSHIP SUMMIT" PARTICIPATION
    (CERTIFICATE) (VISIT WILLOWCREEK.COM/SUMMIT FOR MORE INFORMATION);
9.  2014 4-WEEK PRISONER "HOUSE OF HEALING" ENLIGHTENMENT PROGRAM
    (CERTIFICATE);
10. JUNE 2013 "I AM THE POWER OF PEACE" VIOLENCE PREVENTION FACILITATOR
    (CERTIFICATE), and
11. 2011 ANGER MANAGEMENT/CAGE YOUR RAGE PROGRAM (363 COMPLETION REPORT).

B4

MICHIGAN DEPARTMENT OF CORRECTIONS

CSJ-363
REV. 09/06
4835-3363

## PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION

| Prisoner Name (last)   (first)   (middle initial) | Prisoner No | Lock No | Institution Code |
|---|---|---|---|
| ODOM, STEVEN | 161794 | B4  032B | LCF |

| Assignment Name | Assignment No. | Date Assigned | Date Evaluated |
|---|---|---|---|
| BLOCK HELP                B4-14 | 654A | 2/15/2018 | 7/6/2020 |

| Assignment Classification: | ☐ Student  ☑ Unskilled  ☐ Semi-Skilled  ☐ Skilled  ☐ Other | Race NW | Date Terminated | Will Take Back ☑ Yes ☐ No |
|---|---|---|---|---|

| Circle the number beside each statement which describes the prisoner's work/school assignment performance: | 3 or more exceptions | 1-2 exceptions | No exceptions |
|---|---|---|---|
| 1. The prisoner was on time. | 0 | 2 | ③ |
| 2. The prisoner came on the correct days. | 0 | 2 | ③ |
| 3. The prisoner followed all safety rules. | 0 | 2 | ③ |
| 4. The prisoner followed all other rules. | 0 | 2 | ③ |
| 5. The prisoner followed the assignment authority's instructions. | 0 | 2 | ③ |
| 6. The prisoner cooperated with the assignment authority, followed the working chain of command and refrained from arguing about assignments. (Working relationship with Authority) | 0 | 2 | ③ |
| 7. The prisoner discussed work/education related problems with peers/tutor, listened to peer's/tutor's point of view, encouraged discussion without argument and limited disruptive vocalizations. (Communication with Peers) | 0 | 2 | ③ |
| 8. The prisoner did the assignment share of the work/education assignment, remained in the assigned area until the end of the shift and engaged in no horseplay. (Teamwork with Peers) | 0 | 2 | ③ |
| 9. The prisoner kept a neat, clean and well groomed personal appearance, suitable for the assignment. | 0 | 2 | ③ |
| 10. The prisoner did job/education tasks according to the job/education description. | 0 | 2 | ③ |
| 11. The prisoner kept the work area neat and clean. | 0 | 2 | ③ |
| 12. The prisoner worked without constant supervision or direction when appropriate. | 0 | 2 | ③ |
| 13. The prisoner was willing to perform additional duties or stay beyond scheduled time. When asked, the prisoner did not argue or complain and performed additional assignments in a satisfactory manner. | 0 | 2 | ③ |

| REVIEWED: Prisoner's Signature: _[signature]_   Date: 7/8/20 | COLUMN TOTAL: | |
|---|---|---|
| | TOTAL SCORE: | 39 |

I RECOMMEND:

☐ Entry Pay with 30 Days Conditional · Below Average Score 0-27    ☐ Status Pay Satisfactory · Average Score 28-34
☑ *Above Average Score 35-39    ☐ Bonus Pay for Food Service Workers    ☐ Termination    ☐ Close Supervision

**Fill in the appropriate information for school programming**            * No notations in the 3 or more exceptions column.

| 14. Academic CBI Modules in Progress ☐ N/A | Subject Letter/Number | / | / | / | | |
|---|---|---|---|---|---|---|

| | | | | | | | Avg. Standard Score | Date Tested |
|---|---|---|---|---|---|---|---|---|
| 15. GED Test Version | | I | II | III | IV | V | | |

Duties (capital letter) Completed. If duty not complete, print duty letter & task (number) completed.

| 16. Voc Ed Program in Progress ☐ N/A | | |
|---|---|---|
| 17. Pre-Release/Job Seeking Skills Completed ☐ YES ☐ NO | | Date Completed: |
| 18. Completed training to operate the following machinery or equipment: | | Date Completed: |
| 19. Attendance | Hours Attended | Hours Missed |

COMMENTS AND RECOMMENDATIONS:            Payrate:    1.77

| Evaluator's Signature | Supervisor's Signature |
|---|---|
| _[signature]_ | _[signature]_ |
| Evaluator's Printed Name and Title | Supervisor's Printed Name and Title |
| Clayman | Clayman |

DISTRIBUTION:  White – Record Office;  Green – Assignment Supervisor;  Canary – School Principal/Classification Director;  Pink – RUM;  Goldenrod – Prisoner

# MICHIGAN DEPARTMENT OF CORRECTIONS
3/07
4835-0900

## PRISONER WORKER SAFETY TRAINING RECORD

### Facility: LCF

Upon completion of any safety and health training, the supervisor will record the training information listed below. The supervisor will maintain and update this training record for each prisoner worker. Copy this form as needed.

(Please Print)                                                    LOCK: B4-53

| PRISONER NAME: ODOM | PRISONER#: 161794 |
| JOB TITLE: Lead Porter | DATE OF HIRE: 8/4/17 |
| OFFICE/DIVISION: B-4 | SUPERVISOR: Ault |

### TRAINING REQUIRED FOR ALL PRISONER WORKERS :

| TRAINING | SUPERVISOR | WORKER INITIALS | DATE |
|---|---|---|---|
| General Safety Orientation | | | 10/3/17 |
| **Hazard Communication – Right To Know *OP-LCF-04.03.101-D is in Law Library *Requirements of the MIOSHA Hazard Communication Standard | | | 10/3/17 |
| Personal Protective Equipment | | | 10/3/17 |

OTHER JOB SPECIFIC SAFETY TRAINING: (Safety training matrices in Section 4 of the MDOC Occupational Safety and Health Policy and Procedures Manual provide a list of required safety and health training by type of work.)

| TRAINING | SUPERVISOR | WORKER INITIALS | DATE |
|---|---|---|---|
| *Use of the Labeling System for Caustics Located in OP-LCF-04.03.101-D | | | 10/3/17 |
| *Location of Eye-Wash Station(s) | | | |
| *Exposure Control Plan for BBP's Updated 07/29/09 | | | |
| *Job Specifications per page(s) of the MDOC Institutional Job Manual | | | |
| *Procedures-Prisoner Use of Tools and Equipment | | | |
| *PD 03.04.110 "Control of Communicable Diseases | | | |
| *PD 03.04.120" Control of Communicable Bloodborne Diseases" | | | |
| *PD 04.03.101 "Occupational Safety" | | | |
| *PD 04.03.102 "Sanitation and Housekeeping Standards" | | | |
| *OP-LCF-04.03.101-C, "Occupational Safety" | | | |
| *OP-LCF-04.03.101-D, "Hazard Communication-Right to Know" | | | |
| *OP-LCF-04.03.101-D, "Personal Protection Equipment" | | | |
| *Location Caustic Storage Area | | | |
| *Location and Use of MSDS Sheets | | | |
| Polishers (Buffers) | | | |
| Vacuums | | | |
| Burnishers | | | |
| Laundry | | | 10/3/17 |
| | | | |
| | | | |
| | | | |
| | | | |

Original: Assignment Supervisor (no copies)

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION**

CSJ-363
REV. 09/06
4835-3363

| Prisoner Name (last) | (first) | (middle initial) | Prisoner No. | Lock No. | Institution Code |
|---|---|---|---|---|---|
| odoM | STEVEN | A | 161794 | B-4-53 | LCF |

| Assignment Name | Assignment No. | Date Assigned | Date Evaluated |
|---|---|---|---|
| Custodial Maintenance Review | 654 A | 9/20/016 | 8/18/017 |

| Assignment Classification: | ☒ Student  ☐ Unskilled  ☐ Semi-Skilled  ☐ Skilled  ☐ Other | Race NW | Date Terminated | Will Take Back ☐ Yes  ☐ No |
|---|---|---|---|---|

| Circle the number beside each statement which describes the prisoner's work/school assignment performance: | 3 or more exceptions | 1-2 exceptions | No exceptions |
|---|---|---|---|
| 1.  The prisoner was on time. | 0 | 2 | ③ |
| 2.  The prisoner came on the correct days. | 0 | 2 | ③ |
| 3.  The prisoner followed all safety rules. | 0 | 2 | ③ |
| 4.  The prisoner followed all other rules. | 0 | 2 | ③ |
| 5.  The prisoner followed the assignment authority's instructions. | 0 | 2 | ③ |
| 6.  The prisoner cooperated with the assignment authority, followed the working chain of command and refrained from arguing about assignments. (Working relationship with Authority) | 0 | 2 | ③ |
| 7.  The prisoner discussed work/education related problems with peers/tutor, listened to peer's/tutor's point of view, encouraged discussion without argument and limited disruptive vocalizations. (Communication with Peers) | 0 | 2 | ③ |
| 8.  The prisoner did the assignment share of the work/education assignment, remained in the assigned area until the end of the shift and engaged in no horseplay. (Teamwork with Peers) | 0 | 2 | ③ |
| 9.  The prisoner kept a neat, clean and well groomed personal appearance, suitable for the assignment. | 0 | 2 | ③ |
| 10.  The prisoner did job/education tasks according to the job/education description. | 0 | 2 | ③ |
| 11.  The prisoner kept the work area neat and clean. | 0 | 2 | ③ |
| 12.  The prisoner worked without constant supervision or direction when appropriate. | 0 | 2 | ③ |
| 13.  The prisoner was willing to perform additional duties or stay beyond scheduled time. When asked, the prisoner did not argue or complain and performed additional assignments in a satisfactory manner. | 0 | 2 | ③ |

REVIEWED: Prisoner's Signature: _Steve Odom_  Date: 8/18/17

| | |
|---|---|
| COLUMN TOTAL: | |
| TOTAL SCORE: | 39 |

**I RECOMMEND:**

☐ Entry Pay with 30 Days Conditional · Below Average Score 0-27    ☐ Status Pay Satisfactory · Average Score 28-34
☒ * Above Average Score 35-39    ☐ Bonus Pay for Food Service Workers    ☐ Termination    ☐ Close Supervision

| Fill in the appropriate information for school programming | * No notations in the 3 or more exceptions column. |
|---|---|

| 14.  Academic CBI Modules in Progress | ☐ N/A | Subject Letter/Number | / | / | / | / |
|---|---|---|---|---|---|---|

| 15.  GED Test Version | | | | I | | II | III | IV | | V | | | Avg. Standard Score | | Date Tested / |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

16.  Voc Ed Program in Progress  ☐ N/A   Duties (capital letter) Completed. If duty not complete, print duty letter & task (number) completed.

| 17.  Pre-Release/Job Seeking Skills Completed  ☐ YES  ☐ NO | Date Completed: |
|---|---|
| 18.  Completed training to operate the following machinery or equipment: | Date Completed: |

| 19.  Attendance | Hours Attended | 0 | 1 | 5 | Hours Missed | 0 | 0 | 0 |
|---|---|---|---|---|---|---|---|---|

**COMMENTS AND RECOMMENDATIONS:**

Prisoner was informed of Building Porter Rules, Porter Responsibilities, Job Descriptions and proper methods, Proper Care of Cleaning Equipment and Safety Issues, Proper use of Cleaning Solutions, Floor Maintenance Programs, Hazard Communications, Personal Protective Equipment, Requirements of MIOSHA Hazard, Occupational Safety and Health, Labeling Systems for Caustics, Exposure Control Plans for Blood Borne Pathogens, Control of Communicable Diseases, MRSA Prevention and Infection Control In the Housing Units. Prisoner also received Custodial Maintenance Tools and Equipment Training and On the Job Training for Unit and Building Porters.

| | |
|---|---|
| Evaluator's Signature | Supervisor's Signature |
| Evaluator's Printed Name and Title | Supervisor's Printed Name and Title |

DISTRIBUTION:  White – Record Office;  Green – Assignment Supervisor;  Canary – School Principal/Classification Director;  Pink – RUM;  Goldenrod – Prisoner

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION**

CSJ-363
REV. 09/06
4835-3363

| Prisoner Name (last) Odom | (first) Steven | (middle initial) | Prisoner No. 161794 | Lock No. B-4-53 | Institution Code LCF |
|---|---|---|---|---|---|

| Assignment Name: Blood Borne Pathogen  (Update Training) | | Assignment No. | Date Assigned 12/28/16 | Date Evaluated 12/28/16 |
|---|---|---|---|---|

| Assignment Classification: ☒ Student  ☐ Unskilled  ☐ Semi-Skilled  ☐ Skilled  ☐ Other | Race | Date Terminated | Will Take Back ☐ Yes  ☐ No |
|---|---|---|---|

| Circle the number beside each statement which describes the prisoner's work/school assignment performance: | 3 or more exceptions | 1-2 exceptions | No exceptions |
|---|---|---|---|
| 1.  The prisoner was on time. | 0 | 2 | 3 |
| 2.  The prisoner came on the correct days. | 0 | 2 | 3 |
| 3.  The prisoner followed all safety rules. | 0 | 2 | 3 |
| 4.  The prisoner followed all other rules. | 0 | 2 | 3 |
| 5.  The prisoner followed the assignment authority's instructions. | 0 | 2 | 3 |
| 6.  The prisoner cooperated with the assignment authority, followed the working chain of command and refrained from arguing about assignments. (Working relationship with Authority) | 0 | 2 | 3 |
| 7.  The prisoner discussed work/education related problems with peers/tutor, listened to peer's/tutor's point of view, encouraged discussion without argument and limited disruptive vocalizations. (Communication with Peers) | 0 | 2 | 3 |
| 8.  The prisoner did the assignment share of the work/education assignment, remained in the assigned area until the end of the shift and engaged in no horseplay. (Teamwork with Peers) | 0 | 2 | 3 |
| 9.  The prisoner kept a neat, clean and well groomed personal appearance, suitable for the assignment. | 0 | 2 | 3 |
| 10.  The prisoner did job/education tasks according to the job/education description. | 0 | 2 | 3 |
| 11.  The prisoner kept the work area neat and clean. | 0 | 2 | 3 |
| 12.  The prisoner worked without constant supervision or direction when appropriate. | 0 | 2 | 3 |
| 13.  The prisoner was willing to perform additional duties or stay beyond scheduled time. When asked, the prisoner did not argue or complain and performed additional assignments in a satisfactory manner. | 0 | 2 | 3 |

| REVIEWED: Prisoner's Signature: | Date: | COLUMN TOTAL: | |
|---|---|---|---|
| | | TOTAL SCORE: | |

**I RECOMMEND:**

☐ Entry Pay with 30 Days Conditional · Below Average Score 0-27   ☐ Status Pay Satisfactory · Average Score 28-34
☐ * Above Average Score 35-39   ☐ Bonus Pay for Food Service Workers   ☐ Termination   ☐ Close Supervision

| **Fill in the appropriate information for school programming** | | | | *No notations in the 3 or more exceptions column. | | |
|---|---|---|---|---|---|---|
| 14.  Academic CBI Modules in Progress | ☐ N/A | Subject | / | / | / | / |
| | | Letter/Number | / | / | / | / |

| | | | | | | | Avg. Standard Score | Date Tested |
|---|---|---|---|---|---|---|---|---|
| 15.  GED Test Version | | | I | II | III | IV | V | |

| 16.  Voc Ed Program in Progress  ☐ N/A | Duties (capital letter) Completed. If duty not complete, print duty letter & task (number) completed. |
|---|---|

| 17.  Pre-Release/Job Seeking Skills Completed  ☐ YES  ☐ NO | Date Completed: |
|---|---|
| 18.  Completed training to operate the following machinery or equipment: | Date Completed: |
| 19.  Attendance | Hours Attended | | Hours Missed | | |

**COMMENTS AND RECOMMENDATIONS:**

This evaluation certifies that the prisoner named above has completed Lakeland Correctional Facilities Bloodborne Pathogens Training Program and is qualified for the Blood Spill Cleanup Crew.  This training meets the latest MIOSHA and ACA Standards.  This training is valid for ONE YEAR ONLY.

Received initial HBV Vaccine inoculation:   Yes  X   No _____
Verified by Health Services:

_Kristin Maxson_
Signature

| Evaluator's Signature _B. Tillston_ | Supervisor's Signature _S. Mittelstadt_ |
|---|---|
| Evaluator's Printed Name and Title B. Tillitson, E-9 | Supervisor's Printed Name and Title S. MITTELSTADT, CLASSIFICATION |

DISTRIBUTION:  White – Record Office;  Green – Assignment Supervisor;  Canary – School Principal/Classification Director;  Pink – RUM;  Goldenrod – Prisoner

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION**

CSJ-363
REV. 09/06
4835-3363

| Prisoner Name (last) | (first) | (middle initial) | Prisoner No. | Lock No. | Institution Code |
|---|---|---|---|---|---|
| Odom | Steve | A | 161794 | 2-257-B | MCF |

| Assignment Name | Assignment No. | Date Assigned | Date Evaluated |
|---|---|---|---|
| Midnight Porter | | 4/1/16 | 6/19/16 |

| Assignment Classification: ☐ Student  ☐ Unskilled  ☒ Semi-Skilled  ☐ Skilled  ☐ Other | Race NW | Date Terminated 6/20/16 | Will Take Back ☒ Yes  ☐ No |
|---|---|---|---|

| Circle the number beside each statement which describes the prisoner's work/school assignment performance: | 3 or more exceptions | 1-2 exceptions | No exceptions |
|---|---|---|---|
| 1. The prisoner was on time. | 0 | 2 | ③ |
| 2. The prisoner came on the correct days. | 0 | 2 | ③ |
| 3. The prisoner followed all safety rules. | 0 | 2 | ③ |
| 4. The prisoner followed all other rules. | 0 | 2 | ③ |
| 5. The prisoner followed the assignment authority's instructions. | 0 | 2 | ③ |
| 6. The prisoner cooperated with the assignment authority, followed the working chain of command and refrained from arguing about assignments. (Working relationship with Authority) | 0 | 2 | ③ |
| 7. The prisoner discussed work/education related problems with peers/tutor, listened to peer's/tutor's point of view, encouraged discussion without argument and limited disruptive vocalizations. (Communication with Peers) | 0 | 2 | ③ |
| 8. The prisoner did the assignment share of the work/education assignment, remained in the assigned area until the end of the shift and engaged in no horseplay. (Teamwork with Peers) | 0 | 2 | ③ |
| 9. The prisoner kept a neat, clean and well groomed personal appearance, suitable for the assignment. | 0 | 2 | ③ |
| 10. The prisoner did job/education tasks according to the job/education description. | 0 | 2 | ③ |
| 11. The prisoner kept the work area neat and clean. | 0 | 2 | ③ |
| 12. The prisoner worked without constant supervision or direction when appropriate. | 0 | 2 | ③ |
| 13. The prisoner was willing to perform additional duties or stay beyond scheduled time. When asked, the prisoner did not argue or complain and performed additional assignments in a satisfactory manner. | 0 | 2 | 3 |

| REVIEWED: Prisoner's Signature _Steve Odom_    Date: 6/20/16 | COLUMN TOTAL: | 39 |
|---|---|---|
| I RECOMMEND: | TOTAL SCORE: | 39 |

☐ Entry Pay with 30 Days Conditional · Below Average Score 0-27      ☐ Status Pay Satisfactory · Average Score 28-34
☒ * Above Average Score 35-39      ☐ Bonus Pay for Food Service Workers      ☐ Termination      ☐ Close Supervision

**Fill in the appropriate information for school programming**      *\* No notations in the 3 or more exceptions column.*

| 14. Academic CBI Modules in Progress ☐ N/A | Subject Letter/Number | / | / | / | / | / |
|---|---|---|---|---|---|---|

| 15. GED Test Version | I | II | III | IV | V | Avg. Standard Score | Date Tested |
|---|---|---|---|---|---|---|---|

16. Voc Ed Program in Progress ☐ N/A      Duties (capital letter) Completed. If duty not complete, print duty letter & task (number) completed.

| 17. Pre-Release/Job Seeking Skills Completed ☐ YES  ☐ NO | Date Completed: |
|---|---|
| 18. Completed training to operate the following machinery or equipment: | Date Completed: |

| 19. Attendance | Hours Attended | | | Hours Missed | | | |
|---|---|---|---|---|---|---|---|

COMMENTS AND RECOMMENDATIONS:

Odom was assigned as Midnight porter. He was a good and reliable worker, required limited supervision.

| Evaluator's Signature _C/O Goodnio_ | Supervisor's Signature _PC Howard_ |
|---|---|
| Evaluator's Printed Name and Title  C/O Goodnio | Supervisor's Printed Name and Title  PC Howard |

DISTRIBUTION: White – Record Office;  Green – Assignment Supervisor;  Canary – School Principal/Classification Director;  Pink – RUM;  Goldenrod – Prisoner

MICHIGAN DEPARTMENT OF CORRECTIONS
**PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION**

CSJ-363
REV. 09/06
4835-3363

| Prisoner Name (last) | (first) | (middle initial) | Prisoner No. | Lock No. | Institution Code |
|---|---|---|---|---|---|
| Odom | Steve | A | 161794 | B5B | MTU |

| Assignment Name | | Assignment No. | Date Assigned | Date Evaluated |
|---|---|---|---|---|
| Unit Laundry | | | 1/7/12 | 11/7/12 |

| Assignment Classification: | ☐ Student  ☐ Unskilled  ☒ Semi-Skilled  ☐ Skilled  ☐ Other | Race NW | Date Terminated 11/7/12 | Will Take Back ☒ Yes ☐ No |
|---|---|---|---|---|

| Circle the number beside each statement which describes the prisoner's work/school assignment performance: | 3 or more exceptions | 1-2 exceptions | No exceptions |
|---|---|---|---|
| 1. The prisoner was on time. | 0 | 2 | 3 |
| 2. The prisoner came on the correct days. | 0 | 2 | 3 |
| 3. The prisoner followed all safety rules. | 0 | 2 | 3 |
| 4. The prisoner followed all other rules. | 0 | 2 | 3 |
| 5. The prisoner followed the assignment authority's instructions. | 0 | 2 | 3 |
| 6. The prisoner cooperated with the assignment authority, followed the working chain of command and refrained from arguing about assignments. (Working relationship with Authority) | 0 | 2 | 3 |
| 7. The prisoner discussed work/education related problems with peers/tutor, listened to peer's/tutor's point of view, encouraged discussion without argument and limited disruptive vocalizations. (Communication with Peers) | 0 | 2 | 3 |
| 8. The prisoner did the assignment share of the work/education assignment, remained in the assigned area until the end of the shift and engaged in no horseplay. (Teamwork with Peers) | 0 | 2 | 3 |
| 9. The prisoner kept a neat, clean and well groomed personal appearance, suitable for the assignment. | 0 | 2 | 3 |
| 10. The prisoner did job/education tasks according to the job/education description. | 0 | 2 | 3 |
| 11. The prisoner kept the work area neat and clean. | 0 | 2 | 3 |
| 12. The prisoner worked without constant supervision or direction when appropriate. | 0 | 2 | 3 |
| 13. The prisoner was willing to perform additional duties or stay beyond scheduled time. When asked, the prisoner did not argue or complain and performed additional assignments in a satisfactory manner. | 0 | 2 | 3 |

| REVIEWED: Prisoner's Signature: _Steve Odom_ | Date: 11/7/12 | COLUMN TOTAL: | 39 |
|---|---|---|---|

| I RECOMMEND: | | TOTAL SCORE: | 39 |
|---|---|---|---|

☐ Entry Pay with 30 Days Conditional · Below Average Score 0-27   ☐ Status Pay Satisfactory · Average Score 28-34
☒ * Above Average Score 35-39   ☐ Bonus Pay for Food Service Workers   ☐ Termination   ☐ Close Supervision

| Fill in the appropriate information for school programming | | *  No notations in the 3 or more exceptions column. |
|---|---|---|

| 14. Academic CBI Modules in Progress   ☐ N/A | Subject | | | | | |
|---|---|---|---|---|---|---|
| | Letter/Number | / | / | / | / | / |

| 15. GED Test Version | | | I | | II | | III | | IV | | V | | Avg. Standard Score | Date Tested |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

16. Voc Ed Program in Progress ☐ N/A    Duties (capital letter) Completed. If duty not complete, print duty letter & task (number) completed.

| 17. Pre-Release/Job Seeking Skills Completed   ☐ YES   ☐ NO | Date Completed: |
|---|---|
| 18. Completed training to operate the following machinery or equipment: | Date Completed: |

| 19. Attendance | Hours Attended | | | Hours Missed | | |
|---|---|---|---|---|---|---|

COMMENTS AND RECOMMENDATIONS:

Mr. Odom completed tasks and was on time for his assignment.

| Evaluator's Signature _R10 mcley_ | Supervisor's Signature _RHM Hummel_ |
|---|---|
| Evaluator's Printed Name and Title  M. Clay RUO | Supervisor's Printed Name and Title  R. Hummel |

DISTRIBUTION:  White – Record Office;  Green – Assignment Supervisor;  Canary – School Principal/Classification Director;  Pink – RUM;  Goldenrod – Prisoner



# CERTIFICATE OF COMPLETION

## Steven A Odom

HAS SUCCESSFULLY COMPLETED THE
TWELVE WEEK INTRODUCTION TO WHOLENESS ETHICS
OF THE

### THE MCF ETHICS AND STEWARDSHIP PROJECT

PROGRAM FACILITATOR

PROGRAM FACILITATOR

PRISON COUNSELLOR

# MCF Ethics and Stewardship Project
# Letter of Recognition

On this __13th__ day of ___August, 2016___ the MCF Ethics and Stewardship Project
would like to recognize the active participation of ___Steven Odom #161794___
in the 12 week introductory level wholeness ethics class.

He has demonstrated a commitment to the class by engaging sincerely in the classroom
discussion and completing all assignments. Some of the ideas discussed were being a
Beneficial Presence and being in right relationship by practicing reverence, goodwill, and
justice in all areas of our lives. Also discussed were concepts such as duty, citizenship, self-
governance, nonviolence, stewardship, honor, responsibility, and respect.

We wish to commend _____Mr. Odom_____ for his part in fulfilling our vision of
"Prisoners and people everywhere adopting the principles of right relationship in our lives,
then becoming stewards of these principles in our communities and to future generations."
Further, we encourage him to continue his progress and commitment to right relationship
beyond participation in this class by continuing to integrate what he has learned into his
life through every relationship.

Congratulations, __Steve_____ and continue doing "only what increases
wholeness in yourself and in the world."


MCF Staff Coordinators

P.C. Howard

Ethics Project Chairman

T. Chapman

Co-Chairman

B.Miles

Name: Odom      Prisoner Number: 161794     Lock: 2-257

Global Leadership Summit

Date: 08/22/2016

Hello,

You were signed up for the Global Leadership Summit.  If you could please fill out this brief survey and turn it back in, it would be appreciated.

Thank you.

Corrections Program Coordinator

**Please Return Survey by Friday, August 26th.**



# MICHIGAN DEPARTMENT OF CORRECTIONS

# Certificate of Excellence

*is hereby granted to:*

## Steve Odom

*for outstanding performance and lasting contribution on*

### The Global Leadership Summit

*Granted: August 12, 2016*

MCF Corrections Program Coordinator

willowcreek.com/Summit

# The House of Healing
## Certificate of Completion

is to acknowledge that:

# STEVE ODOM

completed our 4-week enlightenment program from

**January 2014 through February 2014**

Congratulations

LRF-P. Watson, APC, Program Coordinator



# The Power of Peace Organization

awards this certificate in acknowledgment to:

## Steve Odom

for participation as a Program Facilitator on this date of:

June 8, 2013

Warden Mary K. Berghuis
www.thepowerofpeace.org

# FLORENCE CRANE CORRECTIONAL FACILITY
# ANGER MANAGEMENT/CAGE YOUR RAGE PROGRAM

### ANGER MANAGEMENT/CAGE YOUR RAGE STUDENT PROGRESS PLOTTER

**Odom**                              **161794 C-1-77**

| | | | | |
|---|---|---|---|---|
| | | | The Angry Volcano | |
| Anger Pout and Prevent Video | 2/17/2011 | | Thoughts, Feelings & Actions | |
| Pre-Test | | | Anger Buttons | |
| The Angry Volcano | | | Anger: The Tip of the Iceburg | |
| Thoughts, Feelings & Actions | | | How Would You Feel | |
| Anger Buttons | | | Physical Cues to Anger | |
| Anger: The Tip of the Iceburg | | | Time-Out Plan: The 5W's and H | |
| How Would You Feel | | | "I" Letter | |
| | | | Self Talk | |
| Anger & Aggression Video | 2/24/2011 | | The Conflict Cycle | |
| Physical Cues to Anger | | | Choices | |
| Time-Out Plan: The 5W's and H | | | Story Board | |
| | | | Do's & Don't's Conflict | |
| What Causes Anger Video | 3/3/2011 | | Word Search: De-Escalation | |
| "I" Letter | | | | |
| Self Talk | | | | |
| The Conflict Cycle | | | | |
| Choices | | | | |
| Story Board | | | | |
| Do's & Don't's Conflict | | | | |
| Word Search: De-Escalation | | | | |
| | | | | |
| How to Manage Anger Video | 3/17/2011 | | | |
| Post-Test | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Facility Cmis Code: LCF                    ENTRY DATE                    4/6/2011

EXIT DATE: _____          COMPLETED HOURS: _____

4

O DROPPED        O TRANSFERRED        O COMPL yes

INSTRUCTOR'S NAME (Please Print): ___T. Huffman

TITLE: __RUM_____

INSTRUCTOR'S SIGNATURE: _____ T. Huffman, RUM

Date 4-6-11

MICHIGAN DEPARTMENT OF CORRECTIONS
PRISONER PROGRAM AND WORK ASSIGNMENT EVALUATION

4835-3363
CSJ-363 3/94

| Prisoner Name (last) | (first) | (middle initial) | Prisoner No. | Lock No. | Institution Code |
|---|---|---|---|---|---|
| Odom | | | 161794 | C-1-77 | LCF |

| Assignment Name | Assignment No. | Date Assigned | Date Evaluated |
|---|---|---|---|
| Cage Your Rage | N/A | 2/17/2011 | 4/6/2011 |

| Assignment Classification: | ☐ Student ☐ Unskilled ☐ Semi-Skilled ☐ Skilled ☒ Other | Race | Date Terminated 3/17/2011 | Will Take Back ☐ Yes ☐ No |
|---|---|---|---|---|

| Circle the number beside each statement which describes the prisoner's work/school assignment performance: | 3 or more exceptions | 1-2 exceptions | No exceptions |
|---|---|---|---|
| 1. The prisoner was on time. | 0 | 2 | 3 |
| 2. The prisoner came on the correct days. | 0 | 2 | 3 |
| 3. The prisoner followed all safety rules. | 0 | 2 | 3 |
| 4. The prisoner followed all other rules. | 0 | 2 | 3 |
| 5. The prisoner followed the assignment authority's instructions. | 0 | 2 | 3 |
| 6. The prisoner cooperated with the assignment authority, followed the working chain of command, and refrained from arguing about assignments. (Working relationship with Authority) | 0 | 2 | 3 |
| 7. The prisoner discussed work/education related problems with peers/tutor, listened to peer's/tutor's point of view, encouraged discussion without argument, and limited disruptive vocalizations (Communication with Peers) | 0 | 2 | 3 |
| 8. The prisoner did the assigned share of the work/education assignment, remained in the assigned area until the end of the shift, and engaged in no horseplay. (Teamwork with Peers) | 0 | 2 | 3 |
| 9. The prisoner kept a neat, clean, and well groomed personal appearance, suitable for the assignment. | 0 | 2 | 3 |
| 10. The prisoner did job/education tasks according to the job/education description. | 0 | 2 | 3 |
| 11. The prisoner kept the work area neat and clean. | 0 | 2 | 3 |
| 12. The prisoner worked without constant supervision or direction when appropriate. | 0 | 2 | 3 |
| 13. The prisoner was willing to perform additional duties or stay beyond scheduled time. When asked, the prisoner did not argue or complain and performed additional assignments in a satisfactory manner. | 0 | 2 | 3 |

| I RECOMMEND: | ☐ Status Pay Satisfactory | * Above Average Score 35-39 | ☐ Termination | TOTAL |
|---|---|---|---|---|
| ☐ Entry Pay with 30 Days Conditional Below Average Score 0-27 | Average Score 28-34 | ☐ Bonus Pay for Food ☐ Service Workers | ☐ Close Supervision | SCORE ☐ |

| Fill in the appropriate information for school programming | | * No notations in the 3 or more exceptions column. | | | | |
|---|---|---|---|---|---|---|
| 14. Academic CBI Modules in Progress ☐ N/A | Subject Letter | Number | | | | |
| 15. GED Test Version | ☐☐☐ | I ☐☐☐ | II ☐☐☐ | III ☐☐☐ | IV ☐☐☐ | V ☐☐☐ | Avg. Standard Score ☐☐☐ | Date Tested ☐☐☐ |
| 16. Voc Ed Program in Progress ☐ N/A | Duties (capital letter) Completed. If duty not complete, print duty letter & task (number) completed. |
| 17. Pre-Release/Job Seeking Skills Completed ☐ YES ☐ NO | Date Completed |
| 18. Attendance | Hours Attended | Hours Missed |

COMMENTS AND RECOMMENDATIONS:
**The above prisoner has been involved in the "Cage Your Rage" program at LCF since 2-17-11. This role is taken on by prisoners who want experience a positive change in their behavior/thinking patterns. This work report marks the completion of an 4 week cycle for this program. Although this Program does not meet any particular RGC Recommendations, it should be recognized as a proactive effort for the prisoner to achieve positive results.**

| Evaluator's Signature | Supervisor's Signature |
|---|---|
| Evaluator's Printed Name and Title Terri A. Huffman, RUM | Supervisor's Printed Name and Title Dep. Hoffner |

DISTRIBUTION: White-Record Office; Green - Assignment Supervisor; Canary - School Supervisor; Pink - RUM; Goldenrod - Prisoner

## A P P E N D I X  "D"

DECLARATION OF SYLVIA CARROLL
(HOME PLACEMENT)

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN A. ODOM, #161794,

                Petitioner,                  Case No. 2:20-cv-12180

-vs-                                   Judge Arthur J. Tarnow

BRYAN MORRISON, WARDEN          Magistrate Judge Anthony P. Patti

                Respondent.

_____/

## DECLARATION OF SYLVIA CARROLL

    I, Sylvia Carroll, pursuant to 28 U.S.C. § 1746, declare under penalty of perjury that:

    1.  I am Steven A. Odom's ex sister-in law.

    2.  I live in a two-bedroom home at 1515 Ridge Road, Lot #220, Ypsilanti, Michigan 48198.

    3.  I have lived and worked in Washtenaw County most of my adult life, and I currently work as a private home-care provider.

    4.  I am very familiar with Steve's criminal history. I am also very familiar with the circumstances which led him to be returned to prison and then charged and convicted of armed robbery and bank robbery. Nonetheless, if Steve were to be released from his confinement on bond, he would be more than welcome to live in my home while he fights his case.

    5.  Steve would have his own bedroom and would be able to quarantine for 14-days upon his release. He would also be able to isolate and practice social distancing during the current coronavirus pandemic.

    6.  I and Steve's family would ensure that he is clothed, fed, sheltered, and medically taken care of if released on bond.

    7.  If called as a witness in a court of law, I can and will testify truthfully to the averments set fourth in this declaration. FURTHER, I say not.

                /s/ *Sylvia Carroll*
                  Sylvia Carroll, Declarant

Dated: October 21, 2020

Steve Odom #161794
Lakeland Correctional Facility
141 First Street
Coldwater, Michigan 49036



RECEIVED
NOV 19 2020
CLERK'S OFFICE
U.S. DISTRICT COURT

11/04/20

Clerk of the Court
United States District Court
US Federal Bldg. - Courthouse
231 W. Lafayette Blvd.
Detroit, Michigan 48226